UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOAN GREEN,

    Plaintiff,

v.                                                                     Case No. 2:10-cv-328
                                                                     CONSENT CASE

BIOLIFE PLASMA SERVICES, L.P.,

    Defendant.
_____/

## OPINION

        Defendant BioLife Plasma Services, L.P., moves for summary judgment on plaintiff's claims. BioLife Plasma Services, L.P. (BioLife), is a business that collects plasma from plasma donors. Plaintiff Joan Green filed this action asserting negligence against defendant. On May 9, 2009, plaintiff donated her plasma at the BioLife facility in Marquette, Michigan. This was the twelfth time that plaintiff had made a donation with defendant. Plaintiff signed an informed consent which warned of the possibility of fainting after blood donation. On this occasion, plaintiff's red blood cells were unable to be re-infused. As a result, plaintiff would not be able to donate blood for a period of eight weeks. Plaintiff drank a bottle of water and then left defendant's business. Plaintiff drove to a grocery store where she began to experience dizziness. Plaintiff passed out at the checkout aisle twice and allegedly sustained a severe injury to her neck. Plaintiff asserts that this incident occurred within thirty-minutes of finishing the donation procedure at BioLife.

        Defendant argues that plaintiff is asserting an unsupported medical malpractice claim. Plaintiff asserts that this is an ordinary negligence action. Plaintiff complained that defendant

violated its own procedures by failing to require plaintiff to wait for thirty minutes before allowing plaintiff to leave the facility. Plaintiff asserts that this action cannot be brought as a medical malpractice action under Michigan law since BioLife is not a "licensed health facility or agency," and the phlebotomists that drew plaintiff's blood are not licensed health care professionals. Defendant argues that plasma donation is regulated by the FDA and the process of blood withdrawal falls under the realm of medical malpractice. Plaintiff asserts a simple ordinary negligence claim that defendant's employees allowed plaintiff to leave the facility before she should have left under the circumstances which was a proximate cause of plaintiff's injuries. Defendant argues that the procedure requiring a donor who could not be re-infused with red blood cells to wait thirty minutes before leaving the facility is an internal procedure and not the standard of care required by plasma facilities. Defendant argues that this internal procedure cannot be the basis for a negligence action.

Defendant's expert John Scott Nystrom, M.D., a board certified specialist in internal medicine, oncology and hematology, has indicated that since plaintiff exhibited no symptoms of donor reaction and made no complaints after the donation, there was no need for defendant to provide plaintiff with any further medical care or evaluation. Dr. Nystrom also asserts that it was "highly unlikely" that the fall at the grocery store could be linked to the blood donation. Dr. Nystrom states that there exists no medical evidence which could link the fainting to the blood donation and, in his opinion, defendant did not breach any standard of care. Defendant further argues that if the court finds that plaintiff's claim is based on negligence, the claim should be dismissed because of lack of proximate cause.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the

- 2 -

burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In *Bryant v. Oakpointe Villa Nursing Centre, Inc.*, 471 Mich. 411, 684 N.W. 2d 864 (2004), the Michigan Supreme Court was faced with a determination of whether certain claims against the nursing home were based on medical malpractice or ordinary negligence. First, a court must determine whether the claim is brought against someone or an entity that is capable of malpractice. MCL § 600.5838a refers to employees or agents of a licensed health facility. The Michigan Supreme Court held that although that section is not a definition section but a section indicating when medical malpractice accrues, that section expands the traditional common-law list of who might be subject to a medical malpractice claim.

Second, a court must decide whether a claim sounds in medical malpractice. A medical malpractice claim can occur only within the course of a professional relationship and must necessarily raise questions involving medical judgment. "A professional relationship sufficient to support a claim of medical malpractice exists in those cases in which a licensed health care professional, licensed health care facility, or agents or employees of a licensed health care facility, were subject to a contractual duty that required that professional, that facility, or the agents or employees of that facility, to render professional health care services to the plaintiff." The final decision the court must make is a determination whether the claim requires expert medical testimony, or is of the type of claim that could be decided by lay jurors based upon their common knowledge and experience.

In applying these rules, the *Bryant* court held that the failure to train nursing home staff regarding the possible positional asphyxiation posed by bed rails involved questions of medical management not ordinarily within the realm of a juror's common experience and understanding. Similarly, the claim of failure to inspect the bed frames and mattresses to recognize the risk of positional asphyxiation required expert analysis. The Michigan Supreme Court found that both of these claims sounded in medical malpractice. Conversely, plaintiff's claim for failing to protect the decedent after she was found entangled between the bed rail and mattress on an earlier occasion, the court concluded, was a claim that sounded in ordinary negligence requiring no expert testimony.

In *Kuznar v. Raksha Corp.,* 481 Mich 169, 750 N.W.2d 121 (2008), the Michigan Supreme Court found no professional relationship between a pharmacy and a pharmacy customer which could support a malpractice action for failing to properly fill a prescription. Although a pharmacy must have a licensed pharmacist on site, who could be subjected to a malpractice action, a pharmacy cannot be liable under medical malpractice law. A pharmacy is not a licensed health

care professional and cannot be liable for malpractice, but is subject to a negligence action. The entities listed by the statute provide for in-patient or out-patient medical care or treatment. MCL § 333.20106(1) provides that a health facility or agency includes:

> (a) An ambulance operation, aircraft transport operation, nontransport prehospital life support operation, or medical first response service.
>
> (b) A clinical laboratory.
>
> (c) A county medical care facility.
>
> (d) A freestanding surgical outpatient facility.
>
> (e) A health maintenance organization.
>
> (f) A home for the aged.
>
> (g) A hospital.
>
> (h) a nursing home.
>
> (i) A hospice.
>
> (j) A hospice residence.
>
> (k) A facility or agency listed in subdivisions (a) to (h) located in a university, college, or other educational institution.

Defendant claims that BioLife is a clinical laboratory since it assesses plasma derived from the human body and, thus, a professional relationship existed between defendant and plaintiff. Defendant also suggests that this court broadly construe the statute and find that BioLife qualifies as a clinical laboratory based upon fairness. Defendant also points out that a licensed physician medical director and licensed nurses work at BioLife and that BioLife is regulated by the Food and Drug Administration. It should be noted that the regulations presented by defendant involve insuring the safety and cleanliness of the blood that is donated, and providing informed consent to the donor. Plaintiff argues that neither of these factors are relevant because other entities that have not qualified

as a health care facility or agency under the malpractice statutes have been regulated by the FDA and employed license health care workers. Defendant has pointed to no authority that FDA regulation is a factor in determining whether an entity is a licensed health care facility under Michigan medical malpractice law. Moreover, plaintiff asserts that no licensed health care workers, including doctors or nurses, had any involvement in her plasma donation on May 9, 2009. Further, plaintiff argues that her claim involved no medical judgment because BioLife's policy required that she wait thirty minutes after her donation before leaving the facility. The technicians merely needed to follow the policy and did not have to make any independent judgment.

This case is very similar to *McDonnell v. American Red Cross,* 2004 WL 1459363 (Mich. App., June 29, 2004), where the plaintiff amended her ordinary negligence complaint to add a malpractice claim. Defendants argued that the negligence claim should be dismissed because it was really an assertion of a malpractice claim that was barred by the statute of limitations. Plaintiff gave blood at a Red Cross blood drive. After the donation, plaintiff sustained an injury when she fainted while walking from the donation table to the snack table. The Michigan Court of Appeals denied defendants' summary disposition motion concluding:

> Thus, defendants contend that because drawing blood is a medical procedure and the evaluation of a donee's reaction is a matter of medical judgment, this case is a one malpractice. We would agree if the claims asserted involved either the medical procedure attendant to plaintiff's blood donation or the attending nurse's medical assessment of plaintiff's reaction, but that is not the case. Plaintiff's claims instead are based on, and therefore limited to, defendants' overall conduct in carrying out the blood drive.
>
> No expert medical testimony is required to establish whether defendants exercised ordinary care, for example, in routinely providing escorts from the blood donation table to the snack table. Similarly, in his deposition testimony, Dr. Bruce Newman, medical director American Red Cross Blood Services, Southeastern Michigan Region, stated that it did not require medical or professional judgment

>> to ask a person how she feels. Newman further stated that escorting donors to the snack table was a safety measure, but escorts were not guaranteed, in part because the number of volunteers available was unpredictable. To the extent, then, that a claim is premised on these circumstances, the claim would sound in ordinary negligence.

*Id.* at *3. The court allowed plaintiff's ordinary negligence claims to proceed and dismissed the medical malpractice claims as not filed within the statutory requirements.

In contrast, defendant cites another blood donor case, *Bauman v. American National Red Cross,* 262 F. Supp. 2d 965 (C.D. Ill. 2003), where the plaintiff alleged that her right median nerve was injured by an improper blood draw. The Illinois district court applying Illinois law,[1] concluded that plaintiff's claims were based not on ordinary negligence but on malpractice. The court explained:

>> The case at issue involves an alleged failure by agents, representatives, and employees of the Red Cross to warn Bauman of her potential for injury, as well as a decision concerning where and how to inject a needle for drawing blood. The standard of care governing this type of decision clearly involves medical learning or principles, and is not within the knowledge of most lay people.

*Id.* at 967-68. The court found that plaintiff's allegation fell within the definition of medical malpractice because the claim was for lack of medical skill and failure to exercise adequate care in rendering service. The court required plaintiff to amend her complaint and file a supporting affidavit or face dismissal of the complaint.

Plaintiff concedes that she is not making any claims directly related to the blood draw, such as the needle slipping out. Plaintiff indicated at the hearing on the motion for summary judgment that her claim is solely one of ordinary negligence. The question presented is whether

---

[1] Plaintiff's action is governed by Michigan law, as defendant concedes. Accordingly, Illinois case law is of marginal relevance.

plaintiff was released too early from the facility after it was known that her red blood cells could not be re-infused. This question does not require expert medical testimony and did not involve any care while rendering a service to plaintiff. Any medical care or medical procedure was over at this time. Moreover, in light of defendant's own policy that a donor should wait thirty minutes after donation when their red blood cells could not be re-infused, no medical judgment was required on behalf of any BioLife employee to follow that policy.

Plaintiff's claim is for ordinary negligence and is not a malpractice claim. Defendant argues that even if it is a negligence claim there can be no proximate cause finding. However, if the court accepts the allegations as presented, since Biolife failed to adhere to its own rule which should have prevented plaintiff from leaving the facility for thirty minutes, plaintiff could not have been at the grocery store at the time she fainted. Plaintiff alleged that she fainted at the grocery store within thirty minutes after her donation. The medical reports of plaintiff's treating physician, Dr. Robb, suggest there was a connection between plaintiff's blood draw and her fainting. Although defendant argues that it is not possible that the donation could be the cause of plaintiff's fainting, a question of fact exists whether the failure to adhere to the BioLife policy was a proximate cause of plaintiff's injuries. Furthermore, as the court in *McDonnell v. American Red Cross* indicated, loss of blood can be the proximate cause of fainting. There are factual issues that render summary judgment inappropriate.

Accordingly, defendant's motion for summary judgment (Docket #114) will be denied.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 31, 2012